```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/10/16
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

EFREM GERSZBERG,

                               Plaintiff,

                 -v-

LI & FUNG (TRADING) LIMITED,

                               Defendant.

------------------------------------------------------------X

16 Civ. 1182 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

     This lawsuit involves an attempt to block an arbitration. Plaintiff Efrem Gerszberg seeks injunctive relief barring defendant Li & Fung (Trading) Limited ("Trading") from arbitrating its claim that Gerszberg has violated a 2009 settlement agreement to which Trading claims to be a third-party beneficiary. Trading claims that the agreement bars Gerszberg from underwriting or supporting a long-pending lawsuit brought in this Court against Trading by NAF Holdings, LLC ("NAF"), of which Gerszberg is sole owner and principal. *See NAF Holdings, LLC v. Li & Fung (Trading) Limited*, 10 Civ. 5762 (PAE) ("*NAF*" or "the Litigation"). That suit is now headed to trial. In the Litigation, NAF claims that Trading breached a contract with NAF, which caused NAF's planned merger with another company, Hampshire Group, Limited ("Hampshire"), to fail. After the merger failed, Gerszberg (and two subsidiaries of NAF) entered into the settlement agreement with Hampshire. In the arbitration it has brought, Trading claims that it is a third-party beneficiary of that agreement and that Gerszberg is violating it by pursuing the Litigation. Gerszberg seeks here to enjoin that arbitration.

The Court previously preliminarily enjoined Trading from pursuing the arbitration while it determined whether the question of arbitrability—specifically, whether Trading is a third-party beneficiary under, and entitled to invoke the protections of, the 2009 settlement agreement—is to be resolved in arbitration or by the Court. Having reviewed the parties' supplemental briefs on this point, the Court holds that this threshold question is for the Court to decide. The Court therefore continues the preliminary injunction, so as to permit the parties to conduct expedited discovery and briefing on this discrete issue.

I.   Background

   A.   The NAF/Trading Litigation

The Court briefly summarizes the essential facts in the *NAF* Litigation. For a more detailed account, the Court refers to its recent decision denying summary judgment. *See NAF* Dkt. 112 ("June 2016 Decision"), *reported at NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, No. 10 Civ. 5762 (PAE), 2016 WL 3098842 (S.D.N.Y. June 1, 2016).

In February 2009, two NAF subsidiaries—NAF Holdings II, LLC ("NAF II") and NAF Acquisition Corp. ("NAF Acquisition") (collectively, "the NAF Subsidiaries")—entered into a merger agreement with Hampshire. *See NAF* Dkt. 89 ("*NAF* Hay Decl."), Ex. G, Def. Ex. 27 ("Merger Agreement"). Under a contract between NAF and Trading, Trading was to provide certain services for post-merger Hampshire. NAF alleges that, in March 2009, shortly before the merger was to be consummated, Trading terminated its relationship with NAF. This, NAF claims, upended NAF's arrangements for financing the merger, which were conditioned on Trading's participation, and ultimately caused NAF to terminate the Merger Agreement and to lose the value of Hampshire.

In July 2010, NAF brought a breach of contract claim against Trading. In 2013, the Court granted summary judgment for Trading, based on Delaware law. *See NAF Holdings, LLC*

2

*v. Li & Fung (Trading) Ltd.*, No. 10 Civ. 5762 (PAE), 2013 WL 489020 (S.D.N.Y. Feb. 8, 2013) ("Feb. 2013 Decision"). That decision was vacated by the Second Circuit following certification to the Delaware Supreme Court for clarification of Delaware law regarding derivative litigation. *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 772 F.3d 740, 750 (2d Cir. 2014) (certifying question to Delaware Supreme Court); *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 118 A.3d 175, 179 (Del. 2015); *NAF Holdings, LLC v. Li & Fung (Trading) Ltd.*, 801 F.3d 92 (2d Cir. 2015) (remanding to this Court). On June 1, 2016, the Court denied Trading's renewed motion for summary judgment and set a schedule for pretrial submissions. *See* June 2016 Decision; *NAF* Dkt. 113.

      **B.**      **The 2009 Settlement Agreement**

Before NAF brought its suit against Trading in 2010, it had threatened to sue Hampshire for, among other things, breach of contract, fraud, and defamation. *See NAF* Hay Decl., Ex. G, Def. Ex. 63 ("Draft Complaint"). The Draft Complaint listed Gerszberg, NAF, NAF II, and NAF Acquisition as prospective plaintiffs. Ultimately, when the nascent dispute was settled, the parties to that agreement were Gerszberg, NAF II, NAF Acquisition, and Hampshire—not NAF or Trading. *See* Dkt. 15 ("Hay Decl."), Ex. 1 (the "Settlement Agreement").

Relevant here, the Settlement Agreement released all claims "aris[ing] out of or relat[ing] in any way" to the Merger Agreement, certain other agreements relating to the merger (collectively, the "Transaction Agreements"), and "the transaction contemplated by the foregoing agreements" (the "Transaction"). *Id.* ¶ 2. The parties to the Settlement Agreement also agreed not to "initiate, institute, reinstitute, maintain, prosecute or voluntarily aid in the initiation [etc.] of, any action, claim, suit, proceeding, arbitration or cause of action of any kind whatsoever, in any court, administrative agency or other forum, *against any person, whether or not a party to this Settlement Agreement*, to recover damages, attorneys fees, expenses of any type or any other

3

losses allegedly sustained as a result of the Transaction Agreements or the Transaction." *Id.* ¶ 7 (emphasis added).  Finally, the Settlement Agreement provided that "[a]ny controversy or claim arising out of or related to this Settlement Agreement, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association ("AAA") under its commercial arbitration rules in accord with its expedited procedures." *Id.* ¶ 11 ("Arbitration Clause").

### C. Trading's Arbitration Claim

On January 21, 2016, more than five years after NAF sued Trading in this Court, Trading filed a claim in arbitration.  Dkt. 1 ("Complaint"), ¶ 19.  Trading alleges in its Statement of Claim that Gerszberg has appeared as NAF's 30(b)(6) witness in the Litigation, submitted declarations for NAF, is "directing or at minimum aiding" the litigation for NAF, is "making all material client decisions," and is "funding the Litigation for NAF."  Complaint, Ex. A ("Statement of Claim"), ¶ 27.  These acts, Trading alleges, violate the Settlement Agreement. Trading argues that it is a third-party beneficiary of that agreement and thereby entitled to act to enforce it.  Trading bases that claim primarily on the Settlement Agreement provision in which the parties agreed not to institute or support any action "against any person, whether or not a party to this Settlement Agreement," relating to the contemplated merger.  Settlement Agreement ¶ 7.  Trading seeks, *inter alia*, an injunction barring Gerszberg from "maintaining, prosecuting or voluntarily aiding in the maintenance or prosecution of the Litigation, including participating in the Litigation and any funding thereof."  Statement of Claim ¶ 39.

### D. Gerszberg's Complaint and Proceedings in this Case

On February 16, 2016, Gerszberg filed a Complaint in this Court seeking (a) a declaratory judgment that Trading is not a third-party beneficiary to the Settlement Agreement, that it has no rights thereunder, and that Gerszberg is not obliged to arbitrate claims brought by

Trading; and (b) a preliminary and permanent injunction restraining Trading from pursuing the arbitration against Gerszberg.

On March 31, 2016, after briefing and argument, the Court granted Gerszberg's motion for a preliminary injunction in an extensive bench ruling. *See* Dkt. 21 ("Tr." or "Bench Opinion"); Dkt. 11 ("Gerszberg Br."); Dkt. 14 ("Trading Br."); Dkt. 17 ("Gerszberg Reply Br."). Applying the standards governing preliminary relief, the Court noted that the balance of hardships heavily favored Gerszberg, because Trading "seeks sweepingly to forestall Gerszberg's participation in virtually all aspects of the pending [Litigation] before this Court." Tr. 28. But, the Court noted, the parties had scantly addressed the threshold question bearing on the merits of Gerszberg's bid to block the arbitration, on which the Court ordered supplemental briefing:

> Where an arbitration agreement broadly delegates issues of arbitrability to the arbitrator, and an entity claiming to be a third-party beneficiary to that agreement seeks to compel a signatory to arbitrate, is it for a Court or for the arbitrator to decide whether the entity is a bona fide third-party beneficiary entitled to enforce the agreement?

*Id.* at 27. The Court advised the parties that it would, after receiving their supplemental briefs, promptly decide whether the preliminary injunction should be continued or lifted. Dkt. 18. The parties submitted supplemental briefs on April 19, 2016. *See* Dkt. 23 ("Gerszberg Supp. Br."); Dkt. 24 ("Trading Supp. Br.").

## II. Applicable Legal Standard

Under the familiar standard for granting a preliminary injunction, to enjoin the arbitration Gerszberg must establish "(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief." *UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 648

(2d Cir. 2011) (quoting *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010)) (internal quotation marks omitted).

### III. Discussion

#### A. Likelihood of Success on the Merits

The Court begins by considering whether Gerszberg has shown either a likelihood of success on the merits or, at least, sufficiently serious questions going to the merits to make them a fair ground for litigation. The ultimate merits question in this case is whether Trading is a third-party beneficiary of the Settlement Agreement so as to have the power to enforce its Arbitration Clause.

##### 1. General Principles of Arbitrability

Where, as here, "the parties dispute not the scope of an arbitration clause but whether an obligation to arbitrate exists," the general presumption in favor of arbitration does not apply. *Applied Energetics, Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011). Instead, "arbitrability questions are presumptively to be decided by the courts," and this presumption "can be rebutted only by clear and unmistakable evidence from the arbitration agreement, as construed by the relevant state law, that the parties intended that the question of arbitrability shall be decided by the arbitrator."[1]  *Telenor Mobile Communications AS v. Storm LLC*, 584 F.3d 396, 406 (2d Cir. 2009) (quoting *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002)) (internal quotation marks omitted).

The Second Circuit has held that when "parties explicitly incorporate rules that empower an arbitrator to decide issues of arbitrability, the incorporation serves as clear and unmistakable evidence of *the parties'* intent to delegate such issues to an arbitrator." *Contec Corp. v. Remote*

---

[1] All parties agree that New York state law applies.

*Solution, Co.*, 398 F.3d 205, 208 (2d Cir. 2005) (emphasis added).  The Settlement Agreement here does precisely that:  The Arbitration Clause provides that "[a]ny controversy or claim arising out of or related to this Settlement Agreement . . . shall be settled by arbitration administered by the American Arbitration Association ("AAA") under its commercial arbitration rules," which, in turn, provide that the arbitrator will decide issues of arbitrability.  *See id.* at 210 n.2 ("[P]arties who contract for arbitration in accordance with arbitration rules such as the AAA Commercial Arbitration Rules have 'thereby agreed to submit questions of arbitrability to the arbitrator.'" (quoting *Shaw Grp. Inc. v. Triplefine Int'l Corp.*, 322 F.3d 115, 122–23 (2d Cir. 2003)).  Thus, were the instant dispute between *parties* to the Settlement Agreement, the Arbitration Clause would clearly require that arbitrability questions be decided by the arbitrator.

### 2. Must the Court or the Arbitrator Decide Who is a Third-Party Beneficiary?

Trading, however, is not a signatory or party to the Settlement Agreement.  As the Second Circuit has explained, "just because a signatory has agreed to arbitrate issues of arbitrability with another party does not mean that it must arbitrate with any non-signatory."  *Contec*, 398 F.3d at 209.  Rather, to determine who decides the issue of arbitrability, "a court must first determine whether the parties have a sufficient relationship to each other and to the rights created under the [arbitration] agreement."  *Id.*  In other words, the question of "relational sufficiency" is for the Court, not the arbitrator, to resolve.  *Id.*

Although the Second Circuit has applied the concept of relational sufficiency on various occasions, it has done so in contexts far afield from that here, as this Court explained in its Bench Opinion.  *See* Tr. 21–24.  In *Contec*, for instance, the Second Circuit held that Contec could compel arbitration of the arbitrability of a dispute arising under an agreement signed by its prior corporate form and the defendant.  The Circuit reasoned that "there is or was an undisputed

7

relationship between each corporate form of Contec" and the defendant seeking to avoid arbitration: The defendant had signed the arbitration agreement, and the dispute arose "because the parties apparently continued to conduct themselves as subject to [that agreement] regardless of change in corporate form." *Id.* Such circumstances, however, do not exist here, where no party to the Settlement Agreement bears any corporate relationship to Trading. *See The Republic of Iraq v. BNP Paribas USA*, 472 F. App'x 11, 13 (2d Cir. 2012) (summary order) (holding that, where the circumstances present in *Contec* are absent, that decision "hardly compels the conclusion that [a signatory] clearly and unmistakably agreed to arbitrate claims . . . with a purported third-party beneficiary of the contract").

Similarly inapposite is a line of cases that have framed the relational sufficiency issue in terms of estoppel. Such cases have often had "a common feature in that the non-signatory party asserting estoppel has had some sort of *corporate* relationship to a signatory party." *Ross v. American Express Co.*, 547 F.3d 137, 144 (2d Cir. 2008). Those circumstances are absent here. *See* Tr. 22–24.

This case instead presents the question of when an entity that claims to be a third-party beneficiary has a sufficient relationship to the parties and the rights created under the agreement containing the arbitration clause such that the issue of arbitrability must be decided by an arbitrator. It is settled that an arbitration agreement may be enforced in favor of third-party beneficiaries. *See Spear, Leeds & Kellogg v. Century Life Assurance Co.*, 85 F.3d 21, 26–27 (2d Cir. 1996). The issue here is whether a court or an arbitrator must decide whether a non-signatory *actually is*, as it claims to be, a third-party beneficiary entitled to enforce such an agreement.

In its supplemental brief, Trading relies heavily on *Thai-Lao Lignite (Thailand) Co. Ltd. v. Government of the Lao People's Democratic Republic*, No. 10 Civ. 5256 (KMW), 2011 WL 3516154 (S.D.N.Y. Aug. 3, 2011), *aff'd*, 492 F. App'x 150 (2d Cir. 2012) (summary order). There, Judge Wood upheld an arbitrator's decision that a non-signatory was an "intended beneficiary" of an arbitration agreement and thus had standing to bring a claim in arbitration. Judge Wood did not herself resolve whether that decision was *correct*. She instead deferred to the arbitrator's decision. *See id.* at *21. Summarily affirming, the Second Circuit stated that "the arbitral panel was free to decide the scope of its own jurisdiction—including whether other parties had standing as third-party beneficiaries." 492 F. App'x at 151.

In claiming that an arbitrator must decide the issue of arbitrability here, Trading casts the Circuit as sweepingly holding that arbitrators are to decide whether an entity has standing as a third-party beneficiary to bring claims under an arbitration agreement. As an initial matter, the relevant sentence from the Circuit's summary affirmance is ambiguous. It could be taken to mean, as Trading advocates, that the arbitrator is free to decide whether a claimant is a bona fide third-party beneficiary *and* whether bona fide third-party beneficiaries have standing to invoke the arbitration agreement.[2] Or it could be taken to mean that the arbitrator is free to decide only the latter question, while the first question, implicitly, is left to the court. This ambiguity undermines Trading's claim that the language in the Circuit's summary affirmance has the long reach that Trading assigns it.

---

[2] The Second Circuit recognized in *Republic of Iraq* that these are two conceptually distinct questions. *See Republic of Iraq*, 472 F. App'x at 14; *see also Williams v. Progressive Ne. Ins. Co.*, 839 N.Y.S.2d 381, 382 (4th Dep't 2007) ("It is well settled that a third party beneficiary is entitled only to those rights which the original parties to the contract intended the third party to have.") (alteration and internal quotation marks omitted); *Warner v. U.S. Sec. & Futures Corp.*, 685 N.Y.S.2d 25, 26 (1st Dep't 1999) (holding it was "not obvious" that a third-party beneficiary clause modified an arbitration clause).

9

Just as important, the context in which *Thai-Lao Lignite* was decided is factually a far cry from this case. First, the objecting signatory in *Thai-Lao Lignite* was going to have to arbitrate claims against it by an actual signatory to the agreement. The presence of a third-party beneficiary as an additional claimant "was not shown to disadvantage" the objecting signatory in any way. *Id.* at 152. Not so here: Trading is the only entity pursuing arbitration, and a decision to compel arbitration would significantly disadvantage Gerszberg (as reviewed below). Second, *Thai-Lao Lignite* arose in a different procedural context. An arbitrator had already interpreted the arbitration clause to permit third-party enforcement, and the decisions by Judge Wood and the Second Circuit deferred to that legal ruling. As a result, neither Judge Wood nor the Second Circuit opined on the merits of the non-signatory's claim to third-party beneficiary status. Third, and most important, on the merits, the claim in *Thai-Lao Lignite* that the claimant had third-party beneficiary status was obviously correct, given the corporate relationship between the non-signatory and a signatory: The non-signatory was 75% owned by a signatory and had been formed pursuant to an earlier contract between the signatories. *See* 2011 WL 3516154, at *1. In contrast, here, whether Trading is indeed a third-party beneficiary of the Settlement Agreement is much in dispute. The Court therefore rejects Trading's argument that *Thai-Lao Lignite* is controlling. Notably in this regard, neither Judge Wood nor the Second Circuit indicated that they viewed their decisions as resolving broadly, as Trading posits, the arbitrability of non-signatories' claims of third-party beneficiary status.

In support of its argument that any "non-frivolous" or "colorable" claim of such status is sufficient to pull a signatory into arbitration to resolve that issue of arbitrability, Trading also relies on an unpublished decision of the Delaware Chancery Court in *Carder v. Carl M. Freeman Communities, LLC*, No. Civ 3319 (VCP), 2009 WL 106510 (Del. Ch. Jan. 5, 2009). *See* Trading

Supp. Br. 5–6.[3]  Indeed, the Chancery Court there, without deciding whether a defendant was *actually* a third-party beneficiary to an arbitration agreement, found the claim "nonfrivolous," and therefore required the plaintiff to make its arguments opposing arbitrability to an arbitrator in the first instance. *Id.* at *7. The Second Circuit, however, has not adopted such a standard. Its decisions instead underscore the judicial duty, at the threshold, to determine whether a non-signatory to an agreement is *in fact* a third-party beneficiary entitled to compel a signatory to arbitrate claims thereunder.

In *McPheeters v. McGinn, Smith & Co.*, for example, the Second Circuit addressed a broker's claim to be a third-party beneficiary of an arbitration agreement between its client and a clearing broker, which executed the client's transactions. 953 F.2d 771, 772 (2d Cir. 1992). The Second Circuit recognized that "under general contract principles, we may deem non-signatories to fall within the scope of an arbitration agreement where that is the intent of the parties." *Id.* But the contract at issue did not evince any such intent, the Court held, even though it contained "numerous references" to the non-signatory broker as the "Introducing Firm." *Id.* at 773. In other words, the Circuit itself, applying familiar standards of contract law, assessed and rejected the purported third-party beneficiary's claim. *See also Hylte Bruks Aktiebolag v. Babcock & Wilcox Co.*, 399 F.2d 289, 292 (2d Cir. 1968) ("[T]he district court was justified in rejecting [the non-signatory's] assertion that it was a third party beneficiary of the [signatories'] contract. [The non-signatory] was not in existence at the time the contract was made nor was it expressly or by implication mentioned in any way."); *Lenhart v. Westfield Fin. Corp.*, 909 F. Supp. 744, 750 (D.

---

[3] Trading also relies on *Carbajal v. Household Bank, FSB*, No. 00 Civ. 626, 2003 WL 22159473 (N.D. Ill. Sept. 18, 2003). *See* Trading Supp. Br. 3–4. That decision, however, is factually quite distinct from this case, beginning with the fact that the plaintiff did not "really dispute" that the most "natural reading" of the contract at issue required arbitration of third-party beneficiary status. *Carbajal*, 2003 WL 22159473, at *5.

Haw. 1995) ("The court must determine whether [the signatories] intended to benefit [the purported third-party beneficiary] in signing the Client Agreement." (citing *McPheeters*)).

The Second Circuit was even more explicit on this point in *John Hancock Life Insurance Co. v. Wilson*, 254 F.3d 48 (2d Cir. 2001). There, the Circuit held that "in some cases a third party with no direct relationship to [a signatory] can compel that [signatory] to arbitrate," but signatories cannot be prevented "from going to the courts to define, as a threshold matter, the outer limits of their obligations." *Id.* at 55. That threshold determination, the Circuit stated, involves assessing the nature of the relationship and the dispute between the signatory and the non-signatory. *See id.* (citing *Spear, Leeds*, 85 F.3d at 26–27; *Kidder, Peabody & Co. v. Zinsmeyer Trusts P'ship*, 41 F.3d 861, 864 (2d Cir. 1994)).

This principle—that a putative third-party beneficiary cannot automatically force a signatory to arbitrate the question of arbitrability, without first making a showing to a court of relational sufficiency—is reinforced by precedents involving arbitrations brought by other types of non-signatories. Courts themselves have resolved, for example, the merits of non-signatories' claims to be assignees or successors to arbitration agreements. *See Herman Miller, Inc. v. Worth Capital, Inc.*, 173 F.3d 844, 1999 WL 132183, at *2 (2d Cir. 1999) (table decision) (rejecting non-signatory's claim that district court should have referred to arbitration the question whether it had been validly assigned a contract with an arbitration clause); *Aoki v. Gilbert*, No. 11 Civ. 2797 (MCE), 2013 WL 1156495, at *8 (E.D. Cal. Mar. 19, 2013) (finding that defendants failed to show they were successors in interest to arbitration agreement). The Second Circuit's arbitration case law does not support exempting claimed third-party beneficiaries from the principle that courts are to assess at the threshold "the relationship among the parties, the contracts they signed (or did not), and the issues that have arisen." *Contec*, 398 F.3d at 209

(quoting *Choctaw Generation Ltd. P'ship v. Am. Home Assur. Co.*, 271 F.3d 403, 406 (2d Cir. 2001)) (internal quotation marks and alteration omitted).  Trading's suggestion that *Thai-Lao Lignite* "dispens[es] with the concept of 'relational sufficiency'" as a gating determination for the courts is, therefore, quite unpersuasive.  Trading Supp. Br. 8.

To be sure, in some cases it has been apparent whether a non-signatory is a third-party beneficiary,[4] such that judicial decisions resolving that discrete threshold issue may have been tacit rather than explicit.  For example, in *Thai-Lao Lignite*, as discussed above, the non-signatory's claim to be a third-party beneficiary was plainly bona fide.  In *Republic of Iraq*, in contrast, the claim of third-party beneficiary status was highly dubious:  Iraq claimed to be a third-party beneficiary, despite the fact that the pertinent contract provision stated that any dispute arising thereunder "shall be referred *by either Party* to arbitration."  472 F. App'x at 12 (emphasis added).  The Circuit's decision that this arbitration clause did not "clearly vest any right to invoke arbitration in a non-party such as Iraq," *id.* at 13, necessarily resolved, *contra* Trading, that Iraq was not a bona fide third-party beneficiary.  *See* Trading Supp. Br. 7.

For these reasons, the Court holds, it is for the Court, not an arbitrator, to make a threshold determination here whether Trading is a third-party beneficiary to the Settlement Agreement entitled to enforce the Arbitration Clause.

---

[4] *Compare Centocor, Inc. v. The Kennedy Inst. of Rheumatology*, No. 08 Civ. 8824 (DC), 2008 WL 4726036, at *3 (S.D.N.Y. Oct. 29, 2008) ("[I]t is undisputed that Kennedy is the intended third-party beneficiary of the [arbitration agreement]."), *with Allstate Ins. Co. v. Toll Bros., Inc.*, No. 15 Civ. 5225, 2016 WL 1086719, at *11 (E.D. Pa. Mar. 21, 2016) ("It is clear from the language of the [contract] that the parties did not express an intention for [non-signatories] to derive the benefits of the [signatories'] agreement to arbitrate.").

### 3.      The Merits:  Is Trading a Third-Party Beneficiary?

The Court's judgment is that it cannot resolve this question securely on the present record, as this is not a case in which the non-signatory's status as a third-party beneficiary is in any sense apparent.  Under New York law, to establish rights as a third-party beneficiary, a party must establish "(1) the existence of a valid and binding contract between other parties, (2) that the contract was intended for its benefit, and (3) that the benefit to it is sufficiently immediate . . . to indicate the assumption by the contracting parties of a duty to compensate it if the benefit is lost."  *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 182 (2011) (citation and alterations omitted).

The contract at issue here, on its face, falls in a middle ground.  Unlike the clause at issue in *Republic of Iraq*, the Arbitration Clause in the Settlement Agreement is not expressly limited to signatories.  But, unlike in the clause in *Thai-Lao Lignite*, it is far from apparent that Trading *is* a third-party beneficiary.  And the parties to this case draw competing inferences on that point from the text of the Settlement Agreement.  In pertinent part, the agreement bars its signatories, including Gerszberg, from initiating or supporting any action against "any person, whether or not a party," to recover losses allegedly sustained as a result of the contemplated NAF/Hampshire merger.  Settlement Agreement ¶ 7.  Gerszberg notes that, if the purpose of this provision were to immunize Trading against any legal actions by NAF/Gerszberg, it would have said so more clearly and mentioned Trading by name.  He also notes that it is improbable that the parties intended to confer such a benefit on Trading without any consideration in return.  *See* Gerszberg Br. 9.  Trading, on the other hand, notes that a non-party need not be identified by name in a contract to have enforceable rights under it.  Trading further argues that it should be viewed as falling within the scope of the contract term "any person."  *See* Trading Br. 19–21.

Presumably in light of these competing cues, the Second Circuit, in remanding, identified this very question as unresolved. It stated, in dicta, that "[w]hether Hampshire intended to make Trading a third-party beneficiary of its contract right is ambiguous." *NAF*, 801 F.3d at 95. As the Circuit surmised, the prohibitory language in the Settlement Agreement may have been included by the contracting parties to protect themselves, including Hampshire, from the burdens of a suit between other entities. *See id.* ("[I]t appears that Hampshire negotiated the provision barring suits against other entities for its own protection—to avoid being dragged into another litigation as a third-party defendant."). Or it may have been included to protect NAF, a non-party to the Settlement Agreement but closely related to party Gerszberg. Or, improbably but conceivably, it may have been included to protect Trading.

The limited extrinsic evidence which the parties have produced to date, and the attendant circumstantial evidence known to the Court, does not conclusively resolve this ambiguity. Gerszberg submitted a declaration from Heath Golden, Hampshire's president and CEO during the relevant period. Golden represented that the Settlement Agreement had been intended to protect Hampshire from liability relating to the planned merger, including claims for contribution or indemnification by a third party against Hampshire, but that it "was not intended to benefit anyone other than the Hampshire Releasees and NAF Releasors." Complaint, Ex. B ("Golden Decl."), ¶¶ 6–7. Trading countered by submitting a supplemental declaration from Golden. Golden there stated that Hampshire's motivation had been "to protect Hampshire from being brought into any and all litigation whatsoever related to the Unconsummated Merger, *whether as a defendant or a witness or in any other capacity*, regardless of whether such litigation was brought by the parties or a third party." Dkt. 16 ("Golden Supp. Decl."), ¶ 4 (emphasis added).

15

This reading, however, may be undermined by the fact that Hampshire, which was presumably subjected to discovery during the *NAF* litigation, at no point invoked the Settlement Agreement to block the action. Notably, the Second Circuit flagged this very point. It wondered whether the standing issue would be mooted if Hampshire intervened in the Litigation or "effectively authorize[d] Trading to enforce Hampshire's right." *NAF*, 801 F.3d at 95 n.2. Hampshire's failure to so act at any point during the *NAF* Litigation may suggest that it did not intend the Settlement Agreement to benefit Trading.

Although these indicia afford some basis for decision, the record necessary to make a fully reliable determination whether Trading was an intended third-party beneficiary of the Settlement Agreement is incomplete. To resolve that question, the Court would benefit from further factual development as to the purpose of and context in which the pertinent provisions of the Settlement Agreement were negotiated. For instance, prior drafts, if any, of the Settlement Agreement, the parties' negotiating history, and written and oral communications between the signatories may bear on whether Trading was an intended beneficiary.

For present purposes, pending such factual development, the question before the Court is whether to continue the preliminary injunction. The first prong of that inquiry is whether the party seeking the injunction, Gerszberg, has made a sufficient showing regarding the merits. For the reasons stated above, Gerszberg has done so. He has raised serious questions as to whether Trading is a third-party beneficiary entitled to invoke the protections of the Settlement Agreement.[5]

---

[5] At the same time, Gerszberg's rhetorical claim that "*no* relationship can be found" between himself and Trading is absurd. Gerszberg Supp. Br. 7 (emphasis added). Gerszberg is the "sole owner and managing principal" of NAF (and, by extension, the NAF Subsidiaries), Complaint ¶ 11, whose business relationship and ensuing dispute with Trading is at the center of the long-running Litigation.

### B.      Irreparable Harm and the Balance of Hardships

As to the other preliminary injunction factors, the Court reaffirms its determination that Trading's attempt to arbitrate threatens Gerszberg with irreparable harm and that the balance of hardships tips decidedly in his favor. *See* Tr. 27–30. As the Court noted in the Bench Decision, Trading seeks to bar Gerszberg from funding the Litigation, from giving direction to and advising the Litigation as NAF's principal, and even from appearing as a witness (except as ordered by a court). *See id.* at 3–7. If Trading prevails, depending on how the prohibitory language of the Settlement Agreement is interpreted, Gerszberg could be completely quarantined, both in his corporate and his personal capacities, from assisting in the Litigation. That, in turn, could cripple NAF's ability to maintain the Litigation, which is now on the verge of trial. Trading's sole rejoinder—that "Gerszberg will suffer no harm by proceeding with arbitration on matters that he agreed to arbitrate," Trading Br. 24–25—assumes the conclusion. The factors of irreparable harm and the balance of hardships, therefore, strongly favor maintenance of the injunction.

On the other side of the equation, Trading has little serious argument against a continued stay of the arbitration. Trading could have pursued the same arbitration, aimed at blocking the *NAF* Litigation, years ago. Whatever its reasons, it chose not to do so. Its decision to first pursue such relief at this late date underscores that the arbitration, whatever the tactical benefits to Trading of now pursuing it, is not fundamental to Trading's interests.[6] Having waited over

---

[6] Indeed, the Second Circuit (like this Court) highlighted for Trading long ago that it could invoke the Settlement Agreement, potentially to its conclusive benefit, by arguing that the Agreement barred the NAF subsidiaries, or Gerszberg, or both, from pursuing the Litigation. For instance, Judge Lynch stated that the Settlement Agreement "appears to bind the [NAF] subsidiaries, and [Gerszberg] personally, not to bring such an action." *NAF*, 772 F.3d at 752 (Lynch, J., concurring). As the Court recently noted in its decision denying Trading's motion for summary judgment, Trading, by not seeking summary judgment based on the Settlement

five years to bring this arbitration, Trading cannot claim harm from an incrementally longer stay while the parties pursue discovery on, and the Court resolves, the issues relating to Trading's right to enforce the Settlement Agreement.

## CONCLUSION

For these reasons, the Court continues the preliminary injunction barring Trading from pursuing arbitration of its claim under the Settlement Agreement. This matter will now proceed to discovery and briefing, so as to enable the Court promptly to determine whether Trading is a bona fide third-party beneficiary of the Settlement Agreement.

The Court directs the parties promptly to meet and confer, and to submit within one week a joint letter setting forth their respective views as to, concretely, what discovery is necessary to resolve this question. The Court expects that such discovery would be limited, and focused on the context and negotiating history of the Settlement Agreement. In the event the parties elect jointly to forego additional discovery, they may do so, understanding that the Court would then resolve the third-party beneficiary issue on the record at hand.

Counsel are advised that given all parties' interests in resolving soon the issue of Gerszberg's right to participate in the Litigation, and given the Court's unwillingness to delay the Litigation any further given its long history, the Court will require such discovery to be

---

Agreement, has now waived the right in the Litigation to defend on this ground. *See NAF*, 2016 WL 3098842, at *18 n.8.

Gerszberg, for his part, has curiously elected not to argue waiver in *this* case—*i.e.*, that Trading waived its right to invoke the Settlement Agreement either as a defense in the Litigation or as a separate arbitral action by waiting five years to pursue such relief. Waiver of the right to arbitrate "is not lightly inferred, but a party can waive its right to arbitration 'when it engages in protracted litigation that prejudices the opposing party.'" *Tech. in P'ship, Inc. v. Rudin*, 538 F. App'x 38, 39 (2d Cir. 2013) (summary order) (quoting *In re Crysen/Montenay Energy Co.*, 226 F.3d 160, 162 (2d Cir. 2000)).

*highly* expedited. The Court presently expects to order that such discovery be accomplished within a two-week period, commencing upon the Court's resolution (which will be prompt) of any issues raised by counsel's joint letter. Post-discovery submissions, the Court anticipates, would be due one week thereafter. Counsel should plan accordingly and specifically should alert any potential fact witnesses of the prospect of an imminent deposition.

The Court again encourages counsel to discuss whether there are terms on which the parties can agree to resolve the Litigation (and this action).

SO ORDERED.

*Paul A. Engelmayer*
Paul A. Engelmayer
United States District Judge

Dated: June 10, 2016
       New York, New York